## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

### NORTHERN DIVISION

| | |
|---|---|
| **LEE DOTSON, et al.**<br><br>    *Plaintiffs*<br><br>*v.*<br><br>**ETHAN NEWBERG, et al.**<br><br>    *Defendants* | **Case No. 21-cv-02769-RDB** |

### AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Lee Dotson, by and through undersigned counsel, hereby files this Amended Complaint against Ethan Newberg, Alex C. Young, and the Baltimore City Police Department; and Plaintiff Charles Kuniken, by and through undersigned counsel, hereby files this Amended Complaint against Ethan Newberg and the Baltimore City Police Department (collectively, "Defendants"), and in support, Plaintiffs state as follows:

### JURISDICTION AND VENUE

1.     This Amended Complaint contains claims arising under the Fourth Amendment, as applied to the states through the Fourteenth Amendment, to the U.S. Constitution and asserts claims for relief pursuant 42 U.S.C. § 1983, claims for relief under Article 24 of the Maryland Constitution, and claims for relief under Maryland state law.

2.     Jurisdiction of this Court arises under 28 U.S.C. § 1343 and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in the District of Maryland pursuant to 28 U.S.C. § 1391(b) because the events, acts, and omissions complained of herein all occurred within this District.

4.      On June 19, 2019, a certified letter giving notice of Plaintiff Dotson's claims was sent to Baltimore City Solicitor, Andre M. Davis, pursuant to the Local Government Tort Claims Act (Md. Code Ann., Cts. & Jud. Proc. §§ 5-301 *et. seq.*).

5.      On June 5, 2020, a certified letter giving notice of Plaintiff Kuniken's claim was sent to Baltimore City Solicitor, Dana P. Moore, pursuant to the Local Government Tort Claims Act (Md. Code Ann. Cts. & Jud. Proc. §§ 5-301 *et. seq.*).

6.      Further, Defendant Baltimore City Police Department had actual notice of the defect or circumstances giving rise to Plaintiffs' injury, pursuant to the Local Government Tort Claims Act (Md. Code Ann. Cts. & Jud. Proc. §§ 5-301 *et. seq.*).

## PARTIES

7.      At all relevant times, Plaintiff Lee Dotson ("Plaintiff Dotson" or "Dotson") was and is a resident of Maryland. He is an adult African American male.

8.      At all relevant times, Plaintiff Charles Kuniken ("Plaintiff Kuniken" or "Kuniken") was and is a resident of Maryland. He is an adult African American male.

9.      Plaintiffs Dotson and Kuniken are collectively referred to herein as Plaintiffs.

10.     At all relevant times, Defendant Ethan Newberg ("Defendant Newberg" or "Newberg") was a Baltimore City Police Officer, employed by Defendant Baltimore City Police Department. As a police officer, Newberg acts and has acted as an agent, servant, and/or employee of the Baltimore City Police Department and within the scope of employment and under color of law. He is sued in his individual capacity.

11.     At all relevant times, Alex C. Young ("Defendant Young" or "Young") was a Baltimore City Police Officer, employed by Defendant Baltimore City Police Department. As a

police officer, Young acts and has acted as an agent, servant, and/or employee of the Baltimore

City Police Department and within the scope of employment and under color of law. He is sued in

his individual capacity.

12.     Defendant Baltimore City Police Department ("BCPD") is a government agency of

the State of Maryland, but BCPD and its officers perform functions typical of a municipal, not

state, police department. The BCPD, through its agents, servants, and employees, hired,

supervised, trained, and retained each identified officer named in this Complaint. By virtue of its

status as a governmental entity that exercised the power delegated by the State of Maryland, the

BCPD acted under the color of state law when it hired, supervised, trained, and retained each

officer named in this Complaint. The BCPD is a "person" under 42 U.S.C. §1983 and is not

immune under the Eleventh Amendment.

13.     At all relevant times each Defendant was acting under color of state law.

## STATEMENT OF FACTS

### A.

### The BCPD's Pattern and Practice of Constitutional Violations

#### 1.

#### Department of Justice Report

14.     In the wake of the death of Freddie Carlos Gray, Jr., ("Freddie Gray") the United

States Department of Justice ("DOJ") released a 163-page report ("DOJ Report") outlining the

BCPD's pervasive pattern and practice of unlawful stops, searches, and arrests that violated the

U.S. Constitution and federal and state laws.

15.     The DOJ report was specific, detailed, and thorough in describing the persistent

and pervasive Constitutional violations committed by the BCPD and its officers. To complete its

investigation, the DOJ interviewed current and former City leaders, current and former

commissioners, and current and former officers. The DOJ also participated in ride-alongs with BCPD officers and interviewed citizens of the City. The DOJ also reviewed hundreds of thousands of pages of documents, which included, *inter alia*, incident reports and data from stops and arrests.

16.     The DOJ found that the pervasive and persistent pattern of Constitutional violations were not new to the BCPD. To the contrary, these violations had been going on for decades, since at least the late 1990s when the BCPD began the institutionalized practice of, *inter alia*, unconstitutionally stopping and searching individuals who were lawfully present in the City's streets, arresting citizens without probable cause, and retaliating against people who engaged in protected speech under the Constitution.

17.     In addition to the BCPD's response to the City's "zero tolerance" policy for enforcement of various laws, the pattern and practice of unconstitutional violations were driven and encouraged by systemic deficiencies in BCPD's policies, training, supervision, and accountability structures.

18.     Consistent with the systemic deficiencies of the BCPD, the BCPD failed to provide oversight to police officers regarding their interactions with citizens that implicated First Amendment protections. Specifically, BCPD officers frequently detained and arrested members of the public for engaging in speech that the officers considered to be critical or disrespectful, even though it was speech protected by the Constitution.

19.     BCPD officers also routinely arrested individuals who exercised their right to verbally criticize or oppose law enforcement officers but who did not actively interfere with the officers' lawful performance of their duties. BCPD officers detained and arrested individuals for speech that they perceived to be rude or critical of the officer or those who questioned the lawfulness or appropriateness of the officers' actions. BCPD officers also retaliated against

4

individuals who engaged in protected speech, tackling and arresting them simply because they spoke out.

20.     Violations were not limited to First Amendment rights violations. The DOJ also reported that a significant number of incidents that it reviewed involved BCPD officers using force against individuals who were fleeing from officers and who presented little or no threat of harm to the officer or to others. Many of the incidents involved officers who chased civilians on foot, often without suspicion that the civilian had committed any serious crime. Once engaged in the pursuit, officers then used force to end the pursuit, regardless of whether they had probable cause to conduct a stop or to make an arrest. Often, the force used to end the pursuit was disproportional to the suspected crime and the threat posed by the citizen, resulting in injury to that citizen.

21.     African Americans endured a disproportionate number of unconstitutional stops, searches, and prosecution of criminal charges. The DOJ concluded that the violations were targeted and directed at African American citizens, suggesting intentional discrimination against the African American citizens of the City. Yet the BCPD failed to conduct any analysis of its own data to ensure that its enforcement activities were non-discriminatory, and when complaints were made to the BCPD regarding discrimination, the BCPD either misclassified or failed to investigate the complaints.

22.     Moreover, the DOJ found that the BCPD's training on force and its Constitutional parameters was severely lacking, with it being sorely deficient at the initial levels through mandatory annual training. The BCPD training failed to provide officers with the skills necessary to conduct law enforcement activities in a safe and Constitutional manner.

23.     The BCPD also lacked clear and adequate policies, and its officers lacked sufficient guidance to ensure that their enforcement activities were safe, effective, and consistent with Constitutional guarantees. Nor were BCPD officers properly trained on how to stop, search, and

arrest, leading to frequent and pervasive violations of federal and state law. And in some instances, the Constitutional violations resulted from supervisory officers' explicit instructions.

24.     Internally, the BCPD failed to collect and analyze data and it also failed to adequately supervise officers. The DOJ found that the BCPD failed to employ policies, training, supervision, data collection, analysis, and accountability systems to ensure that officers who engaged in unconstitutional practices were held accountable.

25.     Moreover, the BCPD discouraged complaints from being filed, it misclassified complaints that were filed, and it conducted little to no investigation of those complaints, leading to a wholly inadequate system of investigating complaints and holding offending officers accountable. The DOJ also found that the BCPD failed to use effective methods to investigate allegations of misconduct, supervise investigations of misconduct, and failed to sustain complaints and to apply discipline consistently.

26.     In many instances of complaints of use of force, supervising officers failed to thoroughly and objectively evaluate an offending officer's use of force. In use of force reports, inconsistencies and problematic behavior were not addressed and cover-ups routinely occurred.

27.     In sum, the BCPD lacked meaningful reporting and investigation systems to deter and address officer misconduct. As a result, resistance to accountability persisted, and officers were reluctant to report misconduct for fear that reporting would be fruitless and would provoke retaliation.

28.     The pattern and practice of Constitutional violations was, and continues to be as identified *infra*, rooted in the lack training, supervision, and oversight by the BCPD and its supervising officers. The repeated and persistent Constitutional violations manifested in stops, searches, and arrests of individuals without probable cause; disproportionate stops of African Americans; the use of unreasonable force in violation of the Fourth Amendment; and using force

or otherwise retaliating against individuals engaged in Constitutionally protected activity, including free speech.

29.     Ultimately, the DOJ concluded, *inter alia*, that the BCPD needed significant reform to ensure that it complied with Constitutional guarantees, to which the BCPD agreed.

## 2.

### Consent Decree

30.     To that end, on April 7, 2017, the BCPD filed a Consent Decree with the City and the DOJ. As part of its agreement, the BCPD agreed to provide new equipment to officers, which included the implementation of body-worn cameras (BWCs).

31.     The BCPD also agreed to provide guidance and training to its officers so that officers' stops, searches, and arrests of citizens of the City complied with the U.S. Constitution and state and federal law.

32.     The BCPD also agreed to promptly investigate and take corrective measures for any officer who violated policies concerning citizens' First Amendment right to free speech, which included the right to criticize law enforcement without the fear of or being subjected to retaliation and the right to observe BCPD officers in the discharge of their duties in all public spaces and other areas in which individuals have a right to be.

33.     BCPD also agreed to ensure that its officers would not take any police action in retaliation for individuals who lawfully were exercising their right to witness, observe, record, comment on, or peacefully protest police activity. Retaliation included ordering individuals to disperse, stop, detain, search, arrest, or issue a citation to, or threatening to stop, detain, search, arrest, or issue a citation to a citizen.

34.     The BCPD did not abide by the terms of the Consent Decree. The rampant violations and cover-ups continued, with Newberg and other officers persistently and repeatedly

violating the Constitutional rights of City citizens as late as 2018 and 2019, with violations that were consistent with or identical to the violations that DOJ previously found that occurred over the course of several years.

35.    As discussed *infra*, BCPD officers continued to engage in conduct that included knowingly, intentionally, and unlawfully harassing, detaining, and assaulting citizens who were engaged in lawful conduct. As discussed in further detail infra, Defendant Newberg unlawfully stopped, detained, assaulted, harassed, and intimidated at least ten individuals without any recourse by his superiors or supervisors.

**3.**

**Previous Lawsuits Against the BCPD**

36.    Newberg's and other officers' pattern and practice of unconstitutional conduct forced Defendant BCPD to defend itself and the officer in lawsuits filed by City citizens whose Constitutional rights were violated, resulting in multiple jury verdicts and settlements.

37.    Notwithstanding the Freddie Gray incident that led to the exposure of the BCPD's pattern and practice of Constitutional violations, it has defended multiple suits alleging excessive force and other Constitutional and tort violations. These matters have resulted in verdicts or settlements against the officers. The BCPD thus had actual knowledge of its officers' unconstitutional use of force but has failed to take any action to correct, curtail, mitigate, or otherwise cease the violations by BCPD police officers.

38.    The following cases are only some of the cases that have been filed against the Department in the wake of Freddie Gray's death either during or after the time into which the Consent Decree was entered. These cases include allegations of using excessive force and/or a pattern and practice by BCPD police officers of Constitutional violations, including illegal

detention, false arrest and imprisonment, unreasonable and excessive force, unreasonable searches

and seizures, and/or other Constitutional violations.

a.   *Burley, et al. v. Baltimore Police Department, et al.*
     Case No.: 1:18-cv-1743-SAG, D. Md.
     (filed in 2018, settled in 2020)

b.   *Grim v. Baltimore City Police Department, et al.*
     Case No.: 1:18-cv-3864-ELH, D. Md.
     (filed in 2018 and settled in 2021)

c.   *Bumgardner v. Taylor, et al.*
     Case No.: 1:18-cv-1438-SAG, D. Md.
     (filed in 2018 and settled in 2020);

d.   *Jones v. Jordan, et al.*
     Case No.: 1:16-cv-02662-GLR, D. Md.
     (filed in 2016 and settled in 2020)

e.   *McDowell v. Grimes, et al.*
     Case No.: 1:17-cv-03200-GLR, D. Md.
     (filed in 2017 and settled in 2019)

f.   *Mouzon v. Meshaw, et al.*
     Case No.: 1:16-cv-00156-RDB, D. Md.
     (filed in 2016 and settled in 2017)

g.   *Leo Joseph Green, et al. v. Byron Conaway, et al.*
     Case No. 24-C-16-003305, Cir. Ct. Balt. City
     (filed in 2016; Plaintiffs' verdict for $147,100 in
     compensatory damages and a punitive damages award for
     $40,000)

h.   *Larry Lomax, et al. v. Lieutenant Christopher O'Ree, et al.*
     Case No. 24-C-16-002313, Cir. Ct. Balt. City
     (Filed in 2016; Plaintiff's verdict in 2018 for $75,000)

i.   *Myreq Williams, et al. v. Off. James Craig*
     Case No. 24-C-16-002313, Cir. Ct. Balt. City
     (filed in 2016; Plaintiff's verdict in 2018 for $130,000)

39.   This list is not exhaustive, only representative, in part, of the settlements and

verdicts by and against BCPD, and it does not include any matters that never led to litigation. Nor

does it contain any internal investigations of complaints during that time frame that were swept under the rug.

40.     Thus, the duration and frequency of these unconstitutional practices were, and are, so widespread and so persistent within the BCPD that they constitute a custom and use with the force of law. The BCPD maintained a custom, policy, and practice of condoning officers conduct by knowingly, consciously, and repeatedly failing to correct a widespread pattern of unconstitutional conduct, which caused Plaintiffs' Constitutional rights to be violated.

### 4.

### BCPD and Ethan Newberg

41.     Most BCPD officers work in either the Patrol Division or the Criminal Investigation Division, each of which is overseen by a Chief. The Patrol Division is divided into 9 Districts (Central, Eastern, Western, Northern, Northwestern, Northeastern, Southern, Southeastern, and Southwestern). Each District has a Captain, which is led by a Major whose primary responsibility is to direct and supervise officers. That Major reports to the Lieutenant Colonel of Patrol, who reports to the Chief of Patrol, who in turn reports to the Deputy Commissioner, who then reports to the Police Commissioner.

42.     Ethan Newberg was sworn in as a police officer with the BCPD on June 26, 1995, ultimately earning the rank of Sergeant in the Southwest District within Baltimore City. He was hired during the time of "zero tolerance" within the City, when the BCPD's pattern and practice of violating citizens' Constitutional rights was institutionalized and central to the BCPD's enforcement paradigm.

43.     Consistent with the structure of the BCPD, Newberg reported to a Captain and Major within his District, who would then, in turn, report up the chain of command. Throughout Newberg's tenure of over 20 years with the BCPD, he was supervised by multiple layers of

superior BCPD officers, all of whom, according to the DOJ, failed to supervise and hold lower ranking officers accountable for their Constitutional violations.

44.     Despite the directives of the Consent Decree, from July 1, 2018 through May 30, 2019, Newberg, having been a duly sworn officer of the BCPD, and while acting under color of law, knowingly, intentionally and unlawfully employed assaultive, intimidating, coercive and illegal tactics to dominate, intimidate, and instill fear in the citizens of the City with no repercussions by the BCPD.

45.     To achieve his goals of domination, intimidation, and fear, Newberg, without probable cause or reasonable articulable suspicion, stopped, accosted, intimidated, harassed, threatened, detained, assaulted, and/or arrested, and/or charged multiple citizens who were committing no crime, in violation of the U.S. and Maryland Constitutions.

46.     Several of Newberg's unlawful detentions and assaults occurred as a direct result of citizens sitting or standing idly nearby by as Newberg was conducting police business, neither causing any disturbance nor creating any threat to Newberg or his colleagues. Several of those unlawful detentions and assaults occurred openly when citizens, who were at a distance from Newberg, questioned what Newberg was doing to or with another citizen. Other unlawful detentions and assaults occurred when citizens attempted to video record what Newberg was doing to or with another citizen.

47.     Many of Newberg's unlawful detentions and assaults occurred during the 2019 fiscal year, during which Newberg was the highest paid Baltimore City public official, making approximately $260,775.00 including $152,968.00 in overtime pay.  During the 2018 fiscal year, Newberg made $243,132.00 as the second highest paid City official. Newberg was one of the highest paid employees in the City, earning hundreds of thousands of dollars, all while inflicting harm and violating innocent citizen's Constitutional rights.

48.     Not only was Newberg supposed to be supervised by other officers of the BCPD, he was also responsible for both the supervision and oversight of his command, and he was additionally responsible for training his subordinates. Newberg's subordinates acted in conjunction with and at the direction of Newberg. Newberg would order other officers, including Defendant Young, to inflict harm and commit Constitutional violations, which they did without reluctance.

49.     For example, consistent with Newberg's pattern and practice of harassment and intimidation, on July 1, 2018, in the area of the 2400 block of Fredrick Avenue, Newberg unlawfully stopped, detained, assaulted, harassed and intimidated "SM" by detaining him without legal cause or justification. SM, who was located across the street from another incident Newberg was involved with, was not interfering with Newberg when Newberg told one of his subordinates, "When we're done here, him (pointing at SM across the street), he's going to go." Newberg then walked across the street; SM walked away; Newberg then pursued him with handcuffs in hand. Newberg ordered him to stop, but SM continued to walk away, stating he was doing nothing wrong and therefore would not stop. Newberg then forcibly took SM into custody.

50.     On January 31, 2019, in the area of the 500 block of Brunswick Street, Newberg unlawfully stopped, detained, assaulted, harassed and intimidated "DM" by detaining him without legal cause or justification. DM was standing near police activity when he was instructed to move away, which he did to the satisfaction of all officers at the scene. Fifteen seconds later, Newberg approached DM and said, "walk away." As instructed, DM began to walk away, and Newberg followed. DM then told Newberg, "Don't touch me" as he continued to walk away, at which time Newberg grabbed DM with both hands and placed DM against a wall, stating, "Hook him up. You were told to walk away; it was a safety issue. You don't make the rules out here, we do." Several minutes later, when DM was challenging why he was being arrested, Newberg stated, "All I want

12

to hear from you was 'you're right.'" Once DM was coerced into giving an "apology," Newberg

released him. As DM was being released, Newberg added, "Hey, don't play me ... You owe me ...

Don't mess with me."

51.     On February 24, 2019, in the area of the 200 block of Wilkins Avenue, Newberg

unlawfully stopped, detained, assaulted, harassed, and intimidated an unknown male by detaining

him without legal cause or justification. While Newberg was assisting on a traffic stop, an

unknown male was sitting on the steps at a house nearby. Newberg turned to him and demanded

that the male produce a key to prove that he lived at the house he was sitting near. The male got

up and began to walk away, at which time Newberg instructed the male to, "go away." As the male

was walking away, Newberg pursued the male, claiming, "You're interfering with my car stop,"

later claiming that the male was "making it unsafe for me." The male was forcibly taken into

custody. The male continued to ask to be released, without success. Newberg later claimed that

the male was trespassing. Newberg then stated, "I don't know what your problem is, why you're

testing me. Do you know me? Have you seen me out here before? Ask around. Do I look like I'm

the one? Yeah, I'm the one ... So, am I the one to try out? So, don't ever disrespect me out here

again . . . now you know, I'm the sergeant they talk about, now you've met me. Sgt. Newberg.

Now you know me. Now we have an understanding, correct?" Moments later, Newberg stated,

"You and me now have an understanding, correct? When I'm conducting police business, just

mind your business." The male was then released.

52.     On March 7, 2019, in the 200 block of South Pulaski Street, Newberg unlawfully

stopped, detained, assaulted, harassed, and intimidated an unknown male by detaining him without

legal cause or justification. When responding to assist other officers with a situation that was

already under control, Newberg saw an unknown male across the street, and commented to his

colleague that, "This guy right here, in the glasses, remember him running from us that day? Come

on, take him." Newberg then ran after the male and forcibly took the male into custody. As the male asked why he was being arrested, Newberg answered, "disorderly." As the male was being led to a squad car, Newberg followed him and stated, "You know me bud, you know better than that . . . you gonna show up, what happens?" When Newberg was challenged by the unknown male to explain why he was being locked up, Newberg stated, "I told you already why you're getting locked up, disorderly. And you were putting my officer's in jeopardy. You incited a crowd." However, there was no crowd. As another citizen walked by, Newberg ordered that person to keep walking, threatening, "I'm . . . gonna treat you like a child and count to three and then put you in time out."

53.     On April 4, 2019, in the 500 block of South Longwood Street, Newberg unlawfully stopped, detained, assaulted, harassed, and intimidated "JC," "TE," and two unknown females, by detaining them without legal cause or justification. JC, who was in the area, walked towards his car. Without justification, Newberg demanded an identification from JC. As JC gave Newberg his identification, Newberg and another officer forcibly placed JC into handcuffs without justification. Newberg then instructed TE and others to "scoot back," which they complied with. As TE was retreating backwards, cell phone video recording in hand, Newberg reached out and forcibly took TE into custody. An unknown female then walked by and Newberg attempted to take her into custody for "not minding her business," according to Newberg. Another unknown female then attempted to retrieve keys in the car belonging to JC, and Newberg took her in to custody as well.

54.     On April 22, 2019, in the area of the 500 block of Bentalou Avenue, Newberg unlawfully stopped, detained, assaulted, harassed, and intimidated an unknown male by detaining him without legal cause or justification. Newberg arrived to assist another officer when an unknown male who was in his row home, on the second floor, with the window open, who inquired as to what was happening across the street. Newberg instructed the male to come out of his house,

14

then instructed one of his subordinates to arrest the male if he came out of the house. When the male exited his house as previously instructed to do by Newberg, Newberg forcibly took him into custody.  When challenged as to the basis for the arrest, Newberg claimed that the male had put "officer safety in jeopardy." Newberg then accused the male of "inciting a crowd.'' However, there was no crowd.

55.     On May 14, 2019, in the 2400 block of Frederick Avenue, Newberg unlawfully stopped, detained, assaulted, harassed and intimidated "MF" by detaining him without legal cause or justification. Newberg and another officer were addressing a parking violation, when MF who was operating a FedEx truck, recognized his co-worker engaged with the police. MF pulled over to offer assistance, when Newberg approached MF, and said, "I'll tell you what, you've got about 3 seconds to--" at which time MF closed his door and attempted to leave, as he was being instructed. Newberg then ordered one of his subordinates to stop MF and his vehicle. As MF got out of his vehicle and, as ordered, produced his license, he called Newberg a "bitch" at which time Newberg immediately took MF into custody. Newberg then made several comments about MF not being worthy of his job with FedEx, "Your truck 's gone, your job is gone I hope, you have no right to even have this job," and attempted to call FedEx to notify MF's employer of the arrest. Newberg then stated, "You're not gonna cuss at the police" and later claimed that cussing at them "…put their life at risk."

56.     Despite the BCPD's commitment to enforcing the Consent Decree, which includes, but is not limited to, training its officers on the guarantees of the U.S. and Maryland Constitutions, supervision of patrol officers by superior officers, and enforcement and accountability, the BCPD, through a pattern and practice, continued to violate the civil rights of the citizens of the City. The BCPD and its commanding officers had actual or constructive knowledge of Newberg and the

officers who engaged in the above-mentioned incidents, yet it refused to train, supervise, and enforce Constitutional guarantees.

57.    All of these incidents took place after the BCPD entered into a Consent Decree with the express purpose, and legal obligation, to identify officers who committed Constitutional violations, to punish the same, and to deter future Constitutional violations of the citizens of the City. Despite this agreement, however, supervising officers utterly failed to adequately train its officers and failed to punish its officers for repeated and flagrant Constitutional violations. By failing to punish, Defendant Newberg and other officers of the Southwestern District knew that they could continue to harass, intimidate, wrongfully search, seize, arrest, and charge innocent citizens of the City.

58.    The BCPD was required to access and review footage from its officers BWC and hold officers who were violating Constitutional rights accountable, yet it utterly failed to hold Officer Newberg and the other officers who were involved in the above-referenced incidents accountable in any way. To the contrary, Officer Newberg and other officers continued their harassment, intimidation, assaults, unlawful stops, unlawful detentions, and unlawful arrests without recourse.

59.    The BCPD, although it committed to training or re-training of its officers pursuant to the Consent Decree, did not train, re-train, discipline, suspend, or otherwise hold Defendants, their subordinates, or their superior and supervising officers accountable for their flagrant Constitutional violations. Consistent with the pattern and practice of violating citizens' Constitutional rights, the seizure, search, and subsequent arrest of Plaintiffs were in direct violation of Plaintiffs' Constitutional rights.

60.    Key reforms that were outlined in the Consent Decree were not implemented, and there were significant delays in other initiatives as well. The BCPD has also failed to implement

training procedures to address the continual and pervasive Constitutional violations committed by BCPD officers with impunity, including Defendants Newberg and Young.

61.     The incidents described *infra* were a direct and proximate result of the pattern and practice of the BCPD to violate citizens' Constitutional rights; the lack of reform, training, supervision, and accountability; and the individual police officer Defendants' violation of citizens' Constitutional rights.

**B.**

**Incidents**

**1**.

**Charles Kuniken**

62.     Consistent with Newberg's pattern and practice of harassment and intimidation, on April 29, 2019, at the 2000 block of W. Pratt Street, Newberg unlawfully stopped, detained, assaulted, harassed, arrested, and intimidated Plaintiff Kuniken.

63.     On that day, Plaintiff Kuniken was walking by when he observed a man being arrested by two BCPD police officers. The two BCPD officers were in the process of placing the man in handcuffs.

64.     One of the BCPD officers had his knee in the man's back, while the other had the man's head in a headlock. The man who was being arrested was bent over, trying to catch his breath.

65.     The BCPD officer who had his knee in the man's back was Newberg. Newberg and the other officer put handcuffs on the man and placed him on the curb.

66.     Plaintiff Kuniken, who observed this, asked Newberg and the other BCPD officer whether the man, now an arrestee, required medical attention.

67.     Incensed, the BCPD officer who had placed the arrestee in the headlock questioned why Plaintiff Kuniken did not ask whether the BCPD officers needed medical attention instead.

68.     By that point, approximately five to seven additional BCPD officers had arrived on the scene. Newberg then yelled to the other newly arrived BCPD officers, referring to Plaintiff Kuniken, "Take him, just take him."

69.     At least one of the other BCPD officers obeyed with the order, and without asking any questions of Plaintiff Kuniken or anyone else, including Newberg, they arrested Plaintiff Kuniken. Plaintiff Kuniken asked why he was being arrested, to which Newberg responded that Kuniken was "hindering an investigation."

70.     The BCPD officer who had handcuffed Plaintiff Kuniken then searched him. The BCPD officer patted Plaintiff Kuniken down, went into his pockets and retrieved a small pocketknife and threw it in the street. The arresting BCPD officer did not find anything else during the illegal search.

71.     That same BCPD officer then handcuffed Plaintiff Kuniken and put him in the back seat of Newberg's squad car and told him to wait.

72.     Plaintiff Kuniken sat in the squad car, with his handcuffs on, for about 10-15 minutes. Newberg then got into the car and drove Plaintiff Kuniken to the Southwestern District.

73.     At no time during this entire incident did a supervising officer or any other officer with the BCPD inquire as to the legality or propriety of the stop, search, arrest, and detention.

74.     Once Newberg and Plaintiff Kuniken arrived at the Southwestern precinct, Newberg put his hands on Kuniken to remove him from the squad car. Kuniken's hands were still in handcuffs at that time.

75.     Newberg, with his hands still on Plaintiff Kuniken, walked him to a holding cell, where Kuniken was held without legal cause or justification.

18

76.    At some point, Newberg then appeared at the door and told Plaintiff Kuniken to step out. Plaintiff Kuniken obeyed, to which Newberg explained that Plaintiff Kuniken was arrested, searched, and detained because of the bogus charges of "interfering with an investigation."

77.    Plaintiff Kuniken, afraid for his life and safety, offered an apology, even though he told Newberg that he did not believe that he did anything wrong.

78.    Newberg then blurted, "That's all I wanted to hear," referring to the apology. He walked Plaintiff Kuniken to the door and told him that he was free to leave.

## 2.

## Lee Dotson

79.    On May 30, 2019 day, at approximately 5:00 p.m., Newberg and Young were on routine patrol in the 2300 block of Ashton Street and the 500 block of Bentalou Street in Baltimore City. Plaintiff Dotson was walking eastbound on Ashton Street, approaching the intersection of Bentalou.

80.    As Plaintiff Dotson was walking toward the intersection, he observed a man who was handcuffed with his hands behind his back sitting on the curb with several BCPD officers nearby. Young was in a BCPD vehicle, which was parked near the man on the curb. Defendant Newberg was standing nearby, outside of the vehicle.

81.    It had been raining and the ground was wet. As Plaintiff Dotson was walking by the man, he made a comment about why the officers were making the man sit on the wet ground. Hearing the comment, Newberg told Dotson that he needed to "mind his business." Dotson reiterated that they should "stop that man from sitting on the ground." As Dotson made the comment, he continued to walk away from the officers, with his back turned away from them.

82.    At no point did Plaintiff Dotson make any threatening statements or any threatening or furtive movements towards the officers or anyone else.

83.    Upon hearing the last statement by Plaintiff Dotson, Newberg turned to Young and, while pointing to the man who was handcuffed and on the ground, asked Young whether "he got him," referring to the officer having control of the detainee who was on the ground.

84.    When Young responded affirmatively, Newberg began running towards Plaintiff Dotson, who was still walking away from the officers with his back turned. Seeing Newberg running towards him, Dotson stated that he would not "run away" from the officers.

85.    Newberg, while sprinting towards Plaintiff Dotson, and without breaking stride after Dotson told him that he would not run from the officers, grabbed Dotson's left arm and yanked it towards him. Dotson demanded that Newberg let go of him.

86.    Plaintiff Dotson broke away from Newberg's hold, and after he broke away, Young, who had now exited the vehicle and was running towards Dotson, grabbed Dotson by the neck and threw him to the ground.

87.    Young then took Dotson's left arm and pressed it behind his back, while Newberg forced Plaintiff Dotson's head into the pavement. Plaintiff Dotson was then ordered to put his other hand behind his back and he was handcuffed.

88.    After Dotson was handcuffed, Newberg called for backup, requesting "another unit or two." A ranking officer with the BCPD arrived and approached Plaintiff Dotson, who was still handcuffed and lying on the ground and asked him if he "had anything on him." That same ranking officer then ordered Plaintiff Dotson to "sit tight."

89.    Young and the aforementioned ranking officer then picked up Plaintiff Dotson and tried to make him sit on the curb, like the other arrestee, to which Dotson vehemently refused multiple times. Young then struck Plaintiff Dotson in the neck.

90.     Plaintiff Dotson then explained to the aforementioned ranking officer what had precipitated his illegal arrest, which the ranking officer ignored.

91.     Defendant Newberg then ordered the two officers to "put him on the ground" as he was pointing to Plaintiff Dotson. Young proceeded to illegally search his pockets as Dotson was in handcuffs with his hands behind his back.

92.     Another BCPD vehicle arrived on the scene. The arrestee who had been sitting on the ground then pointed out the obvious: that Plaintiff Dotson "didn't do nothing" to deserve this treatment, to which Defendant Newberg pointed to him and ordered him to "be quiet." Young continued to search Dotson, while yet another BCPD officer observed.

93.     By this time, there were at least five other BCPD officers on the scene. Not one of them asked why Dotson was arrested, why he was searched, and what crimes, if any, he had committed. They merely stood by, indifferently observing the events that unfolded.

94.     Several moments later, one of the officers finally asked Newberg if Plaintiff Dotson was under arrest, to which Newberg maliciously responded, "He is under arrest, yes." When Dotson asked why he is under arrest, Newberg then snarled at Dotson, "Just go to jail. Take your charge like a man." Dotson asked for a second time why he was under arrest, to which Newberg yelled at Dotson, "Take your charge."

95.     Plaintiff Dotson then asked why he was going to jail, to which Newberg explained, "Because you don't know how to act." Dotson asked the other BCPD officers and bystanders whether anyone else had heard that he was being arrested because he did not know how to act. Even though Newberg had yelled out the grounds for arrest loud enough for everyone to hear, including the other officers, none of the officers questioned Newberg, Young, or anyone else regarding the arrest, including the supervising officer who was present at the scene.

96.     Newberg then ordered Young to search Plaintiff Dotson, claiming that Dotson had not been searched, to which Young responded that he "just did [search him]."

97.     None of the other officers, who totaled at least seven at this point, questioned the illegal arrest or the illegal search. They, like many times before with other innocent citizens, went along and proceeded to violate Dotson's rights.

98.     In explaining his illegal arrest and illegal charges, Newberg then lied to the ranking officer and said that Dotson was interfering with his arrest.

99.     Other citizen bystanders were observing and commenting on the events as they unfolded. Unhappy that citizens were observing the flagrant violations first-hand and daring to comment, Newberg, yelled out to a female bystander to "mind her business," and when she refused, he instructed her to "go to bed." An officer who was sitting in the vehicle, snickered at Newberg's comment to the woman.

100.     Throughout this entire exchange, neither the aforementioned ranking officer nor any of the other officers refused to follow Newberg's unlawful orders, illegal searches, or even comment on Newberg's unprofessional—and entirely illegal—behavior.

101.     Finally, a BCPD officer told Defendant Newberg to "relax." Defendant Newberg then erupted and ordered the BCPD officer to "leave my scene" and then continued with the instruction: "Don't you ever tell me to me how to do my job."

102.     Plaintiff Dotson was charged with possession with intent to distribute, possession—not marijuana, disorderly conduct, and resisting/interfering with an arrest. He spent the night in jail and was released the following day after he posted bond.

103.     Consistent with the pattern and practice of Constitutional violations, Young and Newberg then fabricated the Statement of Probable Cause, stating therein that Plaintiff Dotson "distracted" the officers from the arrestee, and he "caused a crowd to start to form[,] creating a

hostile environment for the officers." Plaintiff Dotson then allegedly "continued to interfere" with the arrest, thus causing Newberg to "attempt[] to gain control over [Dotson]." The fabrication continued, with Young alleging that Dotson "got into a combative aggressive stance" towards Newberg, and that Dotson subsequently resisted arrest.

104.    After the BWC footage was released online that directly contradicted the account of the officers and clearly showed a plethora of Constitutional violations and unlawful conduct by the officers, a *nolle prosequi* was entered as to all charges on June 4, 2019.

105.    As a direct and proximate result of Defendants' actions or omissions stated herein, Plaintiffs suffered, and continues to suffer from mental anguish, emotional pain and suffering, humiliation, loss of dignity, loss of liberty, and other expenses.

## CLAIMS

## COUNT I

**42 U.S.C. §1983**
**Unconstitutional Custom, Pattern and/or Practice of**
**Unlawful Seizure, Unlawful Search, Unlawful Arrest, Excessive Use of Force,**
**and Improper Use of Police Powers**
**(*Monell* Claim)**

**(Plaintiffs against Defendant BCPD)**

106.    Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

107.    This Count is brought by Plaintiffs against all Defendants identified herein, jointly and severally.

108.    At all relevant times herein, Defendant BCPD and all other individual Defendants were state actors and "persons" within the meaning of 42 U.S.C. § 1983 and their conduct was and is subject to 42 U.S.C. § 1983.

109.    At all relevant times herein, Plaintiffs had rights under the Fourth Amendment, as applied to the states through Fourteenth Amendment, not to have their person or property unlawfully searched, seized, detained, and arrested in an unreasonable manner, not to be deprived of their liberty without due process of law, not to be summarily punished, and not to be subjected to the use of unreasonable, illegal, and excessive force.

110.    Defendants, while acting under color of law, jointly and severally, deprived Plaintiffs of their clearly established and well-settled rights under the Fourth Amendment, as applied to the states through the Fourteenth Amendment, of the U.S. Constitution not to have their person or property unlawfully searched, seized, detained in an unreasonable manner, not to be deprived of their liberty without due process of law, not to be summarily punished, and not to be subjected to the use of unreasonable, unlawful, and excessive force.

111.    Under the Fourth Amendment, as applied to the states through the Fourteenth Amendment, to the U.S. Constitution, Defendant BCPD is prohibited from allowing, enabling, and facilitating its officers to engage in a pattern, practice, policy, or custom of violating citizens' civil rights and is obligated to train and supervise its officers in the recognition and handling of incidents of misuse of police powers and rights violations committed by Defendant BCPD's officers, as well as recognizing patterns of systemic perpetuation of the same.

112.    Defendant Newberg persistently engaged in a widespread practice of unconstitutional conduct of harassing, detaining, arresting, searching, using excessive force, and charging citizens with crimes that he knew that they did not commit. This conduct continued without any recourse for years. Consistent with the directives of the Consent Decree, Newberg was required to wear BWCs during his interactions with citizens, and he was required to record these interactions.

113.    Newberg and other officers of the BCPD engaged in a widespread and persistent pattern of unconstitutional conduct such that supervising officers either knew or should have known that Newberg and other officers of the BCPD were abusing their police powers and persistently and continuously violating citizens' rights. The BCPD and the supervising officers, through their deliberate indifference, failed to correct and otherwise hold Newberg and other officers of the BCPD accountable for abuse of their police powers and their unconstitutional conduct.

114.    As identified *supra*, at all relevant times, the BCPD maintained a custom, policy, and/or practice of condoning officers' conduct in knowingly, consciously, and repeatedly failing to stop or correct the widespread pattern of unconstitutional conduct.

115.    By establishing, executing, implementing, enforcing, directing, supervising and/or controlling polices, customs, practices, usages, and procedures to be used by police officials and officers of the BCPD, as set forth *supra*, Defendant BCPD, while acting under color of law, engaged in a pattern and practice of unconstitutional conduct.

116.    Defendant BCPD failed to investigate instances where such conduct was alleged, thereby allowing its officers to engage in a pattern and practice of unconstitutional conduct such that the unconstitutional conduct became a custom or usage with the force of law. The duration and frequency of Newberg's and other BCPD officers' unconstitutional conduct was so prevalent that it became the custom or usage within the BCPD, having the force and color of law.

117.    By failing to correct the officers' pervasive Constitutional violations, the BCPD injured Plaintiffs, thereby committing an independent act under §1983.

118.    Plaintiffs' rights were violated in the manner that the DOJ outlined in its Report, thus causing Plaintiffs to be deprived of their clearly established and well-settled rights under the Fourth Amendment, as applied to the states through the Fourteenth Amendment, not to have their

person or property unlawfully searched, seized, detained, and arrested in an unreasonable manner, not to be deprived of their liberty without due process of law, not to be summarily punished, and not to be subjected to the use of unreasonable and excessive force.

119.   As alleged herein, Defendant BCPD engaged in a pattern, practice, policy, or custom of allowing, enabling, and facilitating its officers to use excessive and unlawful force in connection with subduing and/or apprehending individuals. Defendant BCPD has also engaged in a pattern, practice, policy, or custom of allowing, enabling, and facilitating its officers to conduct unlawful arrests, unlawful searches, unlawful seizures and has permitted officers to improperly use police powers.

120.   It is established now and was clearly established at the time of the aforementioned actions that the conduct, pattern, and practices of Defendant BCPD and all other individual Defendants identified herein violated the Fourth Amendment, as applied to the states through the Fourteenth Amendment, to the U.S. Constitution.

121.   As alleged herein, the actions by all named Defendants were objectively unreasonable, excessive, absent any lawful justification and/or excuse, and were in keeping with the pattern practice, police and/or custom of the Defendant BCPD.

122.   As a direct and proximate result of Defendants' actions or omissions identified herein, Plaintiffs sustained physical, emotional, mental, and financial injuries, including, but not limited to, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, loss of liberty, and other expenses. Plaintiffs' liberty and property were deprived without the judgment of their peers or by the law of the land.

123.   Defendant BCPD and all other officers identified herein subjected Plaintiffs to these deprivations of their rights maliciously and/or acting with reckless disregard for or with deliberate

indifference to whether Plaintiffs' civil rights would be violated by their actions and that such actions were the moving force behind the violations and the injuries Plaintiffs suffered.

124.    Defendants' actions or omissions as described herein, were intentional, wanton, willful, malicious, and were done with a blatant and reckless disregard for Plaintiffs' Constitutionally protected rights, and, as such, Plaintiffs are entitled to compensatory and punitive damages from Defendants individually.

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor, and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, plus costs and interest, punitive damages, and any other such relief that this Court deems proper.

## COUNT II

### 42 U.S.C. §1983
### Unconstitutional Custom, Pattern and/or Practice of
### Failure to Train and Supervise
### (*Monell* Claim)

### (Plaintiffs against Defendant BCPD)

125.    Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

126.    This Count is brought by Plaintiffs against all Defendants identified herein, jointly and severally.

127.    Under the Fourth Amendment, as applied to the states through the Fourteenth Amendment, to the U.S. Constitution, Defendant BCPD is prohibited from engaging in and permitting its officers to engage in a pattern, practice, policy or custom of violating citizens' civil rights and it is obligated to train and supervise officers in the recognition and handling of incidents of corruption, misuse of police powers, and rights violations committed by Defendant BCPD's officers, as well as recognizing patterns of systemic perpetuation of same.

128.    At all relevant times, Defendant BCPD, directly and through its officers and agents had an obligation to ensure that its officers, employees, and agents, exercised the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the training, supervision, and oversight of all employees, agents, and officers under its direction and control.

129.    As identified *supra*, the training, supervision, and oversight required by Defendant BCPD regarding incidents of misuse of police powers, and rights violations committed by Defendant BCPD's officers was inadequate, insufficient, or nonexistent, and Defendant BCPD, directly and through its employees, agents and officers, failed to exercise the requisite degree of care in the supervision of all employees, agents, and officers under its direction and control.

130.    Ranking officers and supervisors had actual or constructive knowledge of the pervasive and persistent pattern and practice that its officers were engaged in conduct that violated clearly established rights, and that this conduct posed an unreasonable risk of Constitutional injury to Plaintiffs.

131.    As identified *supra*, ranking offices and supervisors had actual or constructive knowledge that Defendants Newberg, Young, other members of the patrol unit in the Southwestern District of BCPD, and other BCPD officers were engaged in widespread misconduct over a period of years that posed an unreasonable risk of Constitutional injury to Plaintiffs and other citizens of Baltimore. Officer Newberg's conduct, in addition to conduct of other BCPD officers, was so persistent and pervasive that it represented a custom or usage with the force of law.

132.    In spite of this knowledge, Defendant BCPD, including ranking officers and supervisors within the BCPD, took no action to prevent or remedy the misconduct by Defendant Newberg, Young, other members of the Southwestern District, and other BCPD officers. They were deliberately indifferent to the persistent Constitutional violations by Officer Newberg,

Young, other patrol officers in the Southwestern District, and other BCPD officers whom they directly supervised. They routinely failed to supervise and discipline Officer Newberg, Young, and other officers, thus allowing the misconduct to continue and thrive.

133.   As alleged herein, Defendant BCPD engaged in a pattern, practice, policy, and/or custom of indifference to incidents of Defendant BCPD officers using excessive and unlawful force in connection with subduing and/or apprehending individuals, and in so doing, it failed to properly supervise Defendant officers and employees in the proper handling of incidents of corruption, misuse of police powers, and Constitutional rights violations committed by Defendant BCPD's officers.

134.   It was readily foreseeable and highly predictable that failing to properly supervise Defendant BCPD's officers in the proper handling of incidents of corruption, misuse of police powers, and Constitutional rights violations committed by Defendant BCPD's officers would, and in fact did, result in the violation of Plaintiffs' Constitutional rights as alleged herein, and Defendant BCPD was indifferent to same.

135.   What is more, the BCPD entered into a Consent Decree, where it expressly agreed to prohibit officers from conducting investigatory stops or detentions without reasonable suspicion that the person has or is about to commit a crime; it agreed to prohibit officers from conducting illegal frisks, pat-downs, and warrantless searches; it agreed to prohibit officers from making illegal arrests; it agreed to provide at least 4 hours of training on stops, searches, and arrests within requirements of the Consent Decree; and it agreed that a supervising officer would review all documentation of investigatory stops and detentions, searches and arrest reports for completeness and adherence to BCPD policy. Yet the BCPD and all individual Defendants identified herein, failed to comport with the express requirements of the Consent Decree and failed to implement

the training, re-training, supervision, oversight, and accountability measures to ensure compliance with Constitutional guarantees.

136.    As alleged herein, the actions by all named Defendants were unreasonable, excessive, absent any lawful justification and/or excuse, and it was a direct result of Defendant BCPD's failure to adequately train, re-train, supervise, oversee, and discipline its employees to deal with the same. Defendant BCPD's failure to properly train, re-train, oversee, supervise, and discipline its employees was tantamount to deliberate indifference as the allegations contained herein occurred well after the entry of the Consent Decree.

137.    Defendant BCPD's failure to adequately train and supervise further confirms the aforementioned pattern and practice. As alleged herein, Defendant BCPD has engaged in a pattern, practice, policy, or custom of allowing Defendant BCPD's officers to use excessive and unlawful force, conduct illegal arrests, searches, and seizures, and improperly use police powers.

138.    Defendant BCPD was aware, and should have foreseen, that Defendant BCPD's officers would confront situations as those that were presented by Plaintiffs. Instances involving illegal conduct similar to that which resulted in the deprivation of Plaintiffs' Constitutional rights and the injuries detailed *supra*, have previously been conducted by Defendant BCPD and have been similarly mishandled by Defendant BCPD as alleged herein.

139.    As alleged herein, the actions by all Defendants were objectively unreasonable, excessive, absent any lawful justification and/or excuse, and was in keeping with the pattern practice, police and/or custom of the Defendant BCPD.

140.    As a direct and proximate result of Defendants' actions or omissions identified herein, Plaintiffs sustained physical, emotional, mental, and financial injuries, including, but not limited to, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, and other

expenses. Plaintiffs' liberty and property were deprived without the judgment of their peers or by the law of the land.

141.    Defendant BCPD and all other officers identified herein subjected Plaintiffs to these deprivations of rights maliciously and/or acting with reckless disregard for or with deliberate indifference to Plaintiffs' rights, resulting in injuries.

142.    Defendants' actions or omissions as described herein were intentional, wanton, willful, malicious and constituted a blatant and reckless disregard for Plaintiffs' Constitutionally protected rights, and, as such, Plaintiffs are entitled to compensatory and punitive damages from Defendants individually.

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor, and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, plus costs and interest, punitive damages, and any other such relief that this Court deems proper.

## COUNT III

### 42 U.S.C. §1983
### Excessive Force / Improper Use of Police Powers

#### (Plaintiff Dotson against Defendants Newberg and Young
#### &
#### Plaintiff Kuniken against Defendant Newberg)

143.    Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

144.    This Count is brought by Plaintiffs against all Defendants identified herein, jointly and severally.

145.    The individual Defendants identified herein are sued in their official and individual capacities.

146.    At all times relevant to this Complaint, Defendants Newberg and Young were acting under the color of state law as officers employed by Defendant BCPD.

147.    Under the Fourth Amendment, as applied to the states through the Fourteenth Amendment, to the U.S. Constitution, Defendants were prohibited from using excessive force in their efforts to seize, detain, and/or search Plaintiffs.

148.    The actions of Defendants as detailed herein constitute excessive and unlawful force in gross violation of Plaintiffs' rights under the Fourth Amendment, as applied to the states through the Fourteenth Amendment, of the U.S. Constitution and the guarantees set forth in 42 U.S.C. §1983.

149.    Defendant Newberg and Young's actions, made along with the other BCPD officers, include, but are not limited to, running after Plaintiff Dotson, tackling him to the ground, forcing his face into the concrete, twisting his arm, and striking him in the neck.

150.    Defendant Newberg's actions, along with the actions of other BCPD officers, include, but are not limited to, stopping, searching, and arresting Plaintiff Kuniken, transporting him to the Southwestern District, and detaining him there without legal cause of justification, releasing him only upon an offer of an apology.

151.    The force used by Defendant Newberg and Young was intentional, excessive, objectively unreasonable, absent any lawful justification or excuse, unconstitutional, and unlawful force in the restraint and/or apprehension of Plaintiffs Dotson and Kuniken, respectively.

152.    Defendants' actions or omissions as described herein, were intentional, wanton, willful, malicious, and a blatant and reckless disregard for Plaintiffs' Constitutionally protected rights, and, as such, Plaintiff Dotson is entitled to compensatory and punitive damages from Defendant Newberg and Young, individually, and Plaintiff Kuniken is entitled to compensatory and punitive damages from Defendant Newberg, individually.

153.    As a direct and proximate result of Defendants' actions or omissions identified herein, Plaintiffs sustained physical, emotional, mental, and financial injuries, including, but not limited to, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, and other expenses. Plaintiffs' liberty and property were deprived without the judgment of their peers or by the law of the land.

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor, and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, plus costs and interest, punitive damages, and any other such relief that this Court deems proper.

## COUNT IV

### 42 U.S.C. §1983
### False Arrest / False Imprisonment

#### (Plaintiff Dotson against Defendants Newberg and Young
#### &
#### Plaintiff Kuniken against Defendant Newberg)

154.    Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

155.    This Count is brought by Plaintiffs against all Defendants as identified herein, jointly and severally.

156.    The individual Defendants identified herein are sued in their official and individual capacities.

157.    At all times relevant to this Complaint, Defendants were acting under the color of state law as an officer employed by Defendant BCPD.

158.    Defendants falsely arrested Plaintiff Dotson when, without reasonable suspicion or probable cause to believe that he had committed any criminal offenses, detained, handcuffed, arrested, and used excessive force.

159.   Defendant Newberg also caused Plaintiff Kuniken to be falsely arrested when, without reasonable suspicion or probable cause to believe he had committed any criminal offenses, caused him to be detained, handcuffed, and arrested.

160.   Defendants intended to harm Plaintiff Dotson when, with excessive force and without probable cause, they detained and arrested him and charged him with a crime.

161.   Defendant Newberg intended to harm Plaintiff Kuniken when, without probable cause, caused him to be detained and arrested.

162.   Defendants further intended to harm Plaintiff Dotson when, without legal justification, they intentionally caused him to be imprisoned.

163.   Defendant Newberg intended harm to Plaintiff Kunken when, without legal justification, he intentionally caused him to be imprisoned.

164.   Defendants' conduct was without legal justification and was improperly motivated by ill will and actual malice. There was no proper motivation or legal justification to warrant the arrests nor the subsequent false imprisonments.

165.   Defendants acted as the BCPD's agents, servants, and/or employees, when they employed excessive force, arrested, and detained Plaintiffs without reasonable suspicion or probable cause to believe that they had committed any criminal offenses. Further, Defendants employed excessive force, detained, arrested, and searched both Plaintiffs without legal basis or justification. Plaintiffs did not have the freedom to leave during the detention and arrest.

166.   Defendants' actions or omissions as described herein, were intentional, wanton, willful, malicious, and constituted a blatant and reckless disregard for Plaintiffs' Constitutionally protected rights, and, as such, Plaintiff Dotson is entitled to compensatory and punitive damages from Defendant Newberg and Young, individually, and Plaintiff Kuniken is entitled to compensatory and punitive damages from Defendant Newberg, individually.

167.    As a direct and proximate result of Defendants' actions or omissions identified herein, Plaintiffs sustained physical, emotional, mental, and financial injuries, including, but not limited to, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, and other expenses. Plaintiffs' liberty and property were deprived without the judgment of their peers or by the law of the land.

**WHEREFORE**, Plaintiffs requests that this Court enter judgment in their favor, and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, plus costs and interest, punitive damages, and any other such relief that this Court deems proper.

## COUNT V

### Malicious prosecution

### (Plaintiff Dotson against Defendants Newberg and Young)

168.    Plaintiff incorporates and adopts each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

169.    This Count is brought by Plaintiff against all Defendants identified herein, jointly and severally.

170.    The individual Defendants identified herein are sued in their official and individual capacities.

171.    At all times relevant to this Complaint, Defendants Newberg and Young were acting under the color of state law as officers employed by Defendant BCPD.

172.    As described above, the Defendants caused and continued a seizure of Plaintiff Dotson pursuant to a legal process unsupported by probable cause. There was no legal justification to pursue Plaintiff Dotson, seize him, arrest him, search him, and charge him with the crimes alleged.

173.    Defendants Newberg and Young had a reasonable opportunity to prevent this harm but failed to do so when they actively and intentionally fabricated the charges against Plaintiff Dotson, despite having actual knowledge that there was no legal justification for seizing, arresting, searching, and charging Plaintiff Dotson.

174.    Defendants undertook the misconduct described herein with malicious intent and willful indifference to Plaintiff Dotson's clearly established Constitutional rights.

175.    Defendants accused Plaintiff Dotson of criminal activity knowing those accusations were without probable cause, and they made statements to prosecutors with the intent of exerting influence and to institute and continue judicial proceedings.

176.    Defendants caused Plaintiff Dotson to be subjected improperly to judicial proceedings for which there was no probable cause, resulting in Plaintiff's injuries.

177.    Defendants knowingly made false statements regarding Plaintiff Dotson's alleged culpability despite having actual or constructive knowledge of their falsity.

178.    Defendants were aware that, as described more fully *supra*, no actual or truthful evidence would have supported the charges against Plaintiff Dotson.

179.    The criminal proceedings terminated in Plaintiff Dotson's favor on June 4, 2019, when the footage from the BWCs became public and a *nolle prosequi* was entered as to all charges against Plaintiff Dotson.

180.    Defendants' conduct was without legal justification and was improperly motivated by ill will and actual malice. There was no proper motivation or legal justification to warrant the arrest in the first place, the subsequent false imprisonment, nor the subsequent malicious prosecution.

181.    Defendants' actions or omissions as described herein, were intentional, wanton, willful, malicious, and constituted a blatant and reckless disregard for Plaintiff Dotson's

Constitutionally protected rights, and, as such, Plaintiff Dotson is entitled to compensatory and punitive damages from Defendants individually.

182.    As a direct and proximate result of Defendants' actions or omissions identified herein, Plaintiff Dotson sustained physical, emotional, mental, and financial injuries, including, but not limited to, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, and other expenses. Plaintiff's liberty and property were deprived without the judgment of his peers or by the law of the land.

**WHEREFORE**, Plaintiff requests that this Court enter judgment in his favor, and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, plus costs and interest, punitive damages, and any other such relief that this Court deems proper.

## COUNT VI

**Maryland Declaration of Rights Article 24: Deprivation of Liberty and Property, Excessive Force, Improper Use of Police Powers, Illegal Arrest**

**(Plaintiff Dotson against Defendants Newberg and Young**
**&**
**Plaintiff Kuniken against Defendant Newberg)**

183.    Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

184.    This Count is brought by Plaintiffs against the Defendants as identified herein, jointly and severally.

185.    The individual Defendants identified herein are sued in their individual capacities.

186.    At all times relevant to this Complaint, Defendants were acting under the color of state law as officers employed by Defendant BCPD.

187.    Defendants violated Plaintiff Dotson's civil rights and due process as set forth in the Maryland State Constitution and the Declaration of Rights, including Article 24. Their actions

were without provocation and without justification and were done with the intent to violate Plaintiff Dotson's civil rights.

188.   Defendant Newberg violated Plaintiff Kuniken's civil rights and due process as set forth in the Maryland State Constitution and the Declaration of Rights, including Article 24. Defendant Newberg's actions were without provocation and without justification and were done with the intent to violate Plaintiff Kuniken's civil rights.

189.   Defendants falsely arrested Plaintiff Dotson when, without reasonable suspicion or probable cause to believe he had committed any criminal offenses, detained, handcuffed, arrested, and used excessive force.

190.   Defendants used excessive force when they tackled Plaintiff Dotson to the ground, forced his face on the ground, twisted his arm, struck him in the neck, handcuffed him, and forcibly arrested him. At all relevant times, Plaintiff Dotson was not free to leave.

191.   Defendants further used excessive force when they caused Plaintiff Dotson to be detained and imprisoned without any legal cause or justification.

192.   Defendants engaged in intentional acts of misconduct, including illegal detention and arrest, excessive force, and false imprisonment, which violated Plaintiff Dotson's civil rights and due process.

193.   Defendants intended to harm Plaintiff Dotson when, with excessive force and without probable cause, they detained and arrested him and charged him with a crime. Defendants further intended to harm Plaintiff Dotson when, without legal justification, they intentionally caused him to be imprisoned.

194.   Defendant Newberg falsely arrested Plaintiff Kuniken when, without reasonable suspicion or probable cause to believe he had committed any criminal offenses, caused him to be

detained, handcuffed, searched, and arrested. At all relevant times, Plaintiff Kuniken was not free to leave.

195. Defendant Newberg's actions were without provocation and without justification and with the intent to violate the civil rights of Plaintiff Kuniken, as well as his rights under Article 24 of the Maryland Declaration of Rights.

196. Defendant Newberg further used excessive force when he caused Plaintiff Kuniken to be detained and imprisoned without any legal cause or justification.

197. Defendant Newberg engaged in intentional acts of misconduct, including illegal detention and arrest, excessive force and false imprisonment which violated Plaintiff Kuniken's civil rights and due process.

198. Defendant Newberg intended harm to Plaintiff Kuniken when, without probable cause, caused him to be detained and arrested. Defendant Newberg intended harm to Plaintiff Kunken when, without legal justification, he intentionally caused him to be imprisoned.

199. The force used by Defendants was intentional, excessive, objectively unreasonable, absent any lawful justification or excuse, unconstitutional, and unlawful in the restraint and/or apprehension of Plaintiffs.

200. Defendants' conduct was without legal justification and was improperly motivated by ill will and actual malice. There was no proper motivation or legal justification to warrant the arrests in the first place nor the subsequent false imprisonments. Defendants engaged in intentional acts of misconduct, including excessive force, and false imprisonment which violated Plaintiffs' civil rights and due process.

201.   Defendants acted as the BCPD's and the State's agents, servants, and/or employees, when they employed excessive force, arrested, and detained Plaintiffs without reasonable suspicion or probable cause to believe that they had committed any criminal offenses. Further, Defendants employed excessive force when they detained, searched, and arrested Plaintiffs without legal basis or justification.

202.   The force used by Defendants was unconstitutional, intentional, excessive, objectively unreasonable, conscience shocking, and absent any lawful justification or excuse. Defendants' conduct lacked any legal rationale, and, as such, Plaintiff Dotson is entitled to compensatory and punitive damages from Defendant Newberg and Young, individually, and Plaintiff Kuniken is entitled to compensatory and punitive damages from Defendant Newberg, individually.

203.   Defendant BCPD is vicariously liable to Plaintiffs for Defendants' violations of their rights under Article 24 of the Maryland Declaration of Rights.

204.   As a direct and proximate result of Defendants' actions or omissions identified herein, Plaintiffs sustained physical, emotional, mental, and financial injuries, including, but not limited to, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, and other expenses. Plaintiffs' liberty and property were deprived without the judgment of their peers or by the law of the land.

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor, and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, plus costs and interest, punitive damages, and any other such relief that this Court deems proper.

## COUNT VII

### Battery

### (Plaintiff Dotson against Defendants Newberg and Young
### &
### Plaintiff Kuniken against Defendant Newberg)

205.     Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

206.     This Count is brought by Plaintiffs against the Defendants as identified herein, jointly and severally.

207.     The individual Defendants identified herein are sued in their individual capacities. At all times relevant to this Complaint, Defendants Newberg and Young were acting under the color of state law as officers employed by Defendant BCPD.

208.     Defendant Newberg and Young assaulted and battered Plaintiff Dotson when they tackled him, forced him to the ground, forced his face into the ground, struck him in the neck, and forcefully arrested him. They intended to unlawfully invade his physical well-being through harmful or offensive contact.

209.     Defendant Newberg assaulted and battered Plaintiff Kuniken when he put his hands on him to remove him from the vehicle, forced him to walk towards a holding cell, and placed him in a holding cell.

210.     Defendant officers acted as the BCPD's agents, servants, and/or employees, when they employed excessive force, arrested, detained, searched Plaintiff Dotson, without reasonable suspicion or probable cause to believe that he had committed any criminal offenses. Further, Defendants employed excessive force, detained, arrested, and searched Plaintiff Dotson without

legal basis or justification, and Plaintiff Dotson did not have the freedom to leave during the detention and arrest.

211.   Defendants' conduct was without legal justification and was improperly motivated by ill will and actual malice.

212.   Defendants intended to harm Plaintiff Dotson when, with excessive force and without probable cause, they tackled him, forced him to the ground, struck him in the neck, forcefully twisted his arm and arrested him, searched him and detained him.

213.   Defendant Newberg intended to harm Plaintiff Kuniken when, without legal cause of justification, placed his hands on Plaintiff Kuniken to remove him from the vehicle and force him into a holding cell.

214.   Defendants further intended to harm Plaintiffs when, without legal justification, they intentionally caused Plaintiff Dotson and Plaintiff Kuniken, respectively, to be imprisoned.

215.   Defendant officers acted as the BCPD's agents, servants, and/or employees, when they employed excessive force, arrested, detained, and searched Plaintiff Dotson without reasonable suspicion or probable cause to believe he had committed any criminal offenses. Further, Defendants employed excessive force, detained, arrested, and searched Plaintiff Dotson without legal basis or justification, and Plaintiff Dotson did not have the freedom to leave during the detention and arrest.

216.   Defendant Newberg employed excessive force, detained, and arrested Plaintiff Kuniken without legal basis or justification, and Plaintiff Kuniken did not have the freedom to leave during the detention and arrest.

217.   Defendants' actions caused Plaintiffs to be put in reasonable apprehension of immediate touching, contact of which they did not consent to.

218.    Plaintiff Dotson was frightened by the continued unlawful actions of Defendants Newberg and Young, including the assault upon him.

219.    Plaintiff Kuniken was frightened by the continued unlawful actions of Defendant Newberg, including the assault upon him.

220.    As a result of these acts, Plaintiffs sustained physical, emotional, mental, and financial injuries, including, but not limited to, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, and other expenses. Plaintiffs' liberty and property were deprived without the judgment of their peers or by the law of the land.

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor, and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, plus costs and interest, punitive damages, and any other such relief that this Court deems proper.

## COUNT VIII

### Negligence

**(Plaintiff Dotson against Defendants Newberg and Young
&
Plaintiff Kuniken against Defendant Newberg)**

221.    Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

222.    This Count is brought by Plaintiffs against the Defendants as identified herein, jointly and severally.

223.    The individual Defendants identified herein are sued in their individual capacities.

224.    At all times relevant to this Complaint the individual Defendants were acting under the color of state law as officers employed by Defendant BCPD.

225.     Defendants owed Plaintiffs a duty to exercise due care when encountering citizens such as Plaintiffs to avoid causing physical or mental injury.

226.     Defendant Newberg and Young breached these duties by, among other things, tackling and grabbing Plaintiff Dotson, throwing him to the ground, forcing his face into the ground, striking him in the neck, and handcuffing Plaintiff.

227.     Defendant Newberg breached these duties by, among other things, causing Plaintiff Kuniken to be arrested without legal cause or justification.

228.     As a result of these acts, Plaintiffs sustained physical, emotional, mental, and financial injuries, including, but not limited to, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, and other expenses. Plaintiffs' liberty and property were deprived without the judgment of their peers or by the law of the land.

229.     Defendants Newberg and Young's negligence proximately caused the injuries that Plaintiff Dotson sustained.

230.     Defendant Newberg's negligence proximately caused the injuries that Plaintiff Kuniken sustained.

231.     All of Plaintiffs' injuries were caused solely by the negligence of Defendants without any contributory negligence by Plaintiffs.

232.     Defendants' conduct was without legal justification and was improperly motivated by ill will and actual malice. Defendants intended to harm Plaintiffs when, with excessive force and without probable cause, and they detained and arrested them. Defendants further intended to harm Plaintiffs when, without legal justification, they intentionally caused them to be imprisoned.

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor, and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, plus costs and interest, punitive damages, and any other such relief that this Court deems proper.

## COUNT IX

### Gross Negligence

### (Plaintiff Dotson against Defendants Newberg and Young
### &
### Plaintiff Kuniken against Defendant Newberg)

233.    Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

234.    This Count is brought by Plaintiffs against the Defendants as identified herein, jointly and severally.

235.    The individual Defendants identified herein are sued in their individual capacities. At all times relevant to this Complaint the individual Defendants were acting under the color of state law as officers employed by Defendant BCPD.

236.    Defendants had a duty to conduct themselves in accordance with the law and Constitutional guarantees, and they had a duty to exercise due care when encountering citizens such as Plaintiffs to avoid causing physical or mental injury.

237.    However, Defendants breached their duty when they engaged in intentional, willful and wanton misconduct and with a reckless disregard for human life or the rights of Plaintiff Dotson. Defendants intentionally inflicted bodily injury to Plaintiff Dotson and acted with utter indifference to Plaintiff's rights and wellbeing.

238.    Defendant Newberg also engaged in intentional, willful and wanton misconduct and with a reckless disregard for human life or the rights of Plaintiff Kuniken. Defendant Newberg intentionally inflicted bodily injury to Plaintiff and acted with utter indifference to Plaintiff's rights and wellbeing.

45

239.    Defendant Newberg and Young's gross negligence proximately caused the injuries that Plaintiff Dotson sustained. All of Plaintiff's injuries were caused solely by the negligence of Defendants without any contributory negligence by Plaintiff.

240.    Defendant Newberg's gross negligence proximately caused the injuries that Plaintiff Kuniken sustained. All of Plaintiff's injuries were caused solely by the negligence of Defendant Newberg without any contributory negligence by Plaintiff.

241.    Defendants' conduct was without legal justification and was improperly motivated by ill will and actual malice. Defendants intended to harm Plaintiffs when, with excessive force and without probable cause, they detained, searched, and arrested them. Defendants further intended to harm Plaintiffs when, without legal justification, they intentionally caused them to be imprisoned.

242.    As a result of these acts, Plaintiffs sustained physical, emotional, mental, and financial injuries, including, but not limited to, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, and other expenses. Plaintiffs' liberty and property were deprived without the judgment of their peers or by the law of the land.

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor, and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, plus costs and interest, punitive damages, and any other such relief that this Court deems proper.

## COUNT X

### Negligent Hiring, Training, Supervision and Retention

### (Plaintiffs against Defendant BCPD)

243.    Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

244.    This Count is brought by Plaintiffs against all Defendants identified herein, jointly and severally.

245.    The individual Defendants identified herein are sued in their individual capacities.

246.    At all times relevant to this Complaint, Defendants Newberg and Young were acting under the color of state law as officers employed by Defendant BCPD.

247.    Defendant BCPD maintained a duty to use reasonable care in hiring, training, supervising and retaining individuals who were competent and fit to perform the duties of a police officer.

248.    Defendant BCPD knew or should have known that the identified and unidentified officers in this Complaint proved unfit for their assigned duties.  Defendants are obligated to train and supervise officers in the recognition and handling of incidents of corruption, misuse of police powers, and rights violations committed by Defendant BCPD's officers, as well as recognizing patterns of systemic perpetuation of same.

249.    At all relevant times, Defendant BCPD, directly and through its officers and agents had an obligation to ensure that its officers, employees, and agents, exercised the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the training, supervision, and oversight of all employees, agents, and officers under its direction and control.

250.    As identified *supra*, the training, supervision, and oversight required by Defendant BCPD regarding incidents of misuse of police powers, and rights violations committed by Defendant BCPD's officers was inadequate, insufficient, or nonexistent, and Defendant BCPD, directly and through its employees, agents and officers, failed to exercise the above requisite degree of care in the supervision of all employees, agents, and officers under its direction and control.

251.     Defendant BCPD, through its agents and employees, supervised the individual Defendants prior to and during the events at issue.

252.     The ranking officers and supervisors had actual or constructive knowledge of the pervasive and persistent pattern and practice that its officers were engaged in conduct that violated clearly established rights, and that this conduct posed an unreasonable risk of Constitutional injury to Plaintiffs.

253.     In spite of this knowledge, Defendant BCPD took no action to prevent or remedy the misconduct by Defendant Newberg, Young, other members of the Southwestern District, and other BCPD officers, or terminate these individuals' employment. It was deliberately indifferent to the persistent Constitutional violations by Officer Newberg, Young, other patrol officers in the Southwestern District, and other BCPD officers whom it directly supervised. In breach of its duties, it routinely failed to supervise and discipline Officer Newberg, Young, and other officers, thus allowing the misconduct to continue and thrive.

254.     Defendant BCPD knew or should have known that the identified and unidentified officers in this Complaint would come into contact with the public, including Plaintiffs, meaning that the risk that the identified and unidentified officers would violate the Constitutional rights of Plaintiffs was foreseeable.

255.     Defendant BCPD failed to properly supervise Newberg, Young, and other officers and employees in the proper handling of incidents of corruption, misuse of police powers, and civil rights violations committed by Defendant BCPD's officers.

256.     It was readily foreseeable and highly predictable that failing to properly supervise Defendant BCPD's officers in the proper handling of incidents of corruption, misuse of police powers, and rights violation committed by Defendant BCPD's officers would, and in fact did,

result in the violation of Plaintiffs' Constitutional rights as alleged herein and Defendant BCPD was indifferent to same.

257.    As a direct and proximate result of Defendants' actions or omissions identified herein, Plaintiffs sustained physical, emotional, mental, and financial injuries, including, but not limited to, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, and other expenses. Plaintiffs' liberty and property were deprived without the judgment of their peers or by the law of the land.

258.    Defendants BCPD and all other officers identified herein subjected Plaintiffs to these deprivations of their rights maliciously and/or acting with reckless disregard for or with deliberate indifference to whether Plaintiffs' rights would be violated by their actions and that such actions were the moving force in their having such rights violated and incurring their injuries.

259.    Defendant BCPD's actions or omissions as described herein, were intentional, wanton, willful, malicious, and a blatant and reckless disregard for Plaintiffs' Constitutionally protected rights, and, as such, Plaintiffs are entitled to compensatory and punitive damages from Defendants, jointly and severally.

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor, and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, plus costs and interest, punitive damages, and any other such relief that this Court deems proper.

## COUNT XI

### Indemnification

260.    Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

261.   Under Maryland law, public entities are directed to pay any tort judgment for which their employees are liable within the scope of their employment.

262.   Defendant officers are or were employees of Defendant BCPD, and they acted within the scope of their employment and in accordance with accepted custom and usage when they committed the misconduct described herein.

263.   Accordingly, Defendant BCPD is required to indemnify any and all of the individual Defendants against whom judgments are entered in this case.

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor, and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, plus costs and interest, punitive damages, and any other such relief that this Court deems proper.

## RELIEF

**WHEREFORE**, as to each and every count pled, Plaintiffs respectfully request that this court award them:

A.   Judgment in favor of Plaintiffs and against Defendants, jointly and severally, finding Defendants liable to Plaintiffs;

B.   Award Plaintiffs compensatory damages in an amount which exceeds $75,000.00, plus interest and costs in an amount to be determined at trial;

C.   Reimburse Plaintiffs all costs paid by Plaintiffs or on behalf of Plaintiffs in connection with the incident in an amount to be determined at trial;

D.   Award the costs and expenses of this case, including attorneys' fees;

E.   Award pre-judgement and post-judgement interest;

F.  Award punitive damages, and

G.  Award all other further and general relief as the court deems just and necessary.


Dated: April 24, 2023                    Respectfully submitted,



                                    MURPHY, FALCON & MURPHY

                                    By: /s/ *William H. Murphy, Jr.*
                                    William H. Murphy, Jr. (Bar # 07985)

                                    /s/ *Andrew K. O'Connell*
                                    Andrew K. O'Connell (Bar # 28168)

                                    /s/ *Nikoletta S. Mendrinos*
                                    Nikoletta S. Mendrinos (Bar # 18961)

                                    /s/ *Malcolm P. Ruff*
                                    Malcolm P. Ruff (Bar # 21595)

                                    One South Street, 30th Floor
                                    Baltimorpe, Maryland  21202
                                    Telephone: (410) 951-8744
                                    Facsimile:  (410) 539-6599
                                    Email: andrew.oconnell@murphyfalcon.com
                                          nikoletta.mendrinos@murphyfalcon.com
                                          malcolm.ruff@murphyfalcon.com

                                    *Attorneys for Plaintiffs*

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on the issues set forth in this Amended Complaint.

/s/ *Andrew K. O'Connell*
Andrew K. O'Connell (Bar # 28168)

## CERTIFICATE OF SERVICE

I HEREBY certify, on this 24th day of April, 2023, that a copy of the foregoing Amended Complaint and Request for Jury Trial was served via the court's electronic filing system upon all counsel of record.


/s/ *Andrew K. O'Connell*
Andrew K. O'Connell (Bar # 28168)